Thomas E. Dvorak (ISB No. 5043)
Blake W. Ringer (ISB No. 11223)
GIVENS PURSLEY LLP
601 W. Bannock
P.O. Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300
tedservice@givenspursley.com
blakeringer@givenspursley.com
16591282_1.doc [15034.3]

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SIBLING RIVALRY DIVERSE SERVICES, LLC, an Idaho limited liability company, | CASE NO: 23-cv-47 |
| Plaintiff, | **COMPLAINT FOR QUIET TITLE** |
| vs. | |
| CITY OF BOISE, a political subdivision of the State of Idaho; UNITED STATES BUREAU OF LAND MANAGEMENT, a governmental entity; | |
| Defendants. | |

## **COMPLAINT**

Plaintiff, Sibling Rivalry Diverse Services, LLC ("Sibling Rivalry"), by and through its attorneys of record, Givens Pursley LLP, brings this action to quiet title and obtain other legal and equitable relief stating the following as its claims against Defendants City of Boise and the United States Bureau of Land Management ("BLM").

**COMPLAINT FOR QUIET TITLE - 1**

## NATURE OF ACTION

1. This is an action for quiet title to an easement over real property owned by Defendants. Sibling Rivalry is an Idaho limited liability company that is wholly owned by Ron Shepherd and owns a parcel of property that is central to this litigation. Ron's great grandmother, Minnie Shepherd, purchased the 40 acres in Curlew Gulch that Sibling Rivalry now owns from the state of Idaho over one hundred years ago. Ron's grandparents and parents previously resided upon the property. Ron, having inherited the property, now desires to build a single family residence upon the property. The road to the property the Shepherd family used for generations eventually became what is called today the Three Bears Trail in the Boise Foothills. This is a dirt road that connects the property with Mountain Cove Road. The City of Boise refuses to acknowledge Ron's easement rights over the Three Bears Trail and has told Ron to use a different access way, a path which would involve blazing a road over what is today known as a portion of the Shane's Loop Trail in the Boise foothills, over BLM land, to connect into Shaw Mountain Road. Ron would prefer not to do so as that has not been the historical physical access route to his property and it would be significantly more expensive to blaze such a road. But Ron needs legal access confirmed in order to build a house. Accordingly, this action is filed to quiet title to one road or the other.

## PARTIES

2. Sibling Rivalry is an Idaho limited liability company with its principal place of business in Idaho.

3. Defendant City of Boise ("City") is a political subdivision formed under the laws of the state of Idaho.

**COMPLAINT FOR QUIET TITLE - 2**

4. Defendant United States Bureau of Land Management ("BLM") is a governmental entity formed under the laws of the United States that owns real property in Idaho.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1346(f), 1367(c)(3) and 2409a.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) as all the real property that is the subject of this action is situated in the state of Idaho.

## FACTUAL ALLEGATIONS

7. Sibling Rivalry owns a 40-acre parcel of real property located in the lower Boise Foothills, just northeast of the Military Reserve. The member of Sibling Rivalry, Ron Shepherd, is the great grandson of Minnie Shepherd, whom records show first obtained an interest in the property from the State of Idaho in 1913.

8. Sibling Rivalry's parcel is identified by the Ada County Assessor's office as Parcel No. S0906212400 and is legally described as: Government Lot 3 of Section 6, Township 3 North, Range 3 East of the Boise Meridian, Ada County, Idaho ("SR Parcel"). A true and correct copy of the vesting deed for this parcel is attached hereto as **Exhibit A.**

9. The SR Parcel is currently surrounded by land owned by the BLM.

10. Adjoining the SR Parcel on its southern and western borders is a 410.8-acre parcel of real property owned by the BLM, identified by the Ada County Assessor's office as Parcel No. S0906131200, and legally described as: Township 3 North, Range 3 East, Ada County, Section 6, [Government] Lot 4 ("BLM Parcel"). A true and correct copy of the State of Idaho Deed that transferred this parcel to the BLM is attached hereto as **Exhibit B**.

**COMPLAINT FOR QUIET TITLE - 3**

11. Adjoining the BLM Parcel on the northern part of its western border is a 78.88-acre parcel of real property owned by Highland Livestock & Land Co., Ltd. ("Highland Livestock"), identified by the Ada County Assessor's office as Parcel No. S1001110080, and legally described as: [Government] Lots 1 and 2 in Section 1, Township 3 North, Range 2 East, Boise Meridian ("Highland Livestock Parcel"). A true and correct copy of the vesting deed for this parcel is attached hereto as **Exhibit C**. As of October 20, 2022 Sibling Rivalry has signed a Residential Easement Agreement with Highland Livestock that recognized the existing access easement over the Highland Livestock Parcel and the same was recorded in the real property records of Ada County, Idaho as instrument number 2022-087677 on October 20, 2022. A true and correct copy of said Residential Easement Agreement is attached as **Exhibit D.**

12. Adjoining the Highland Livestock Parcel on its southern border and the southern half of its western border is a 218.82-acre parcel of real property owned by the City, identified by the Ada County Assessor's office as Parcel No. S1001131300, and whose legal description is provided under the heading "Parcel 2" in Warranty Deed Instrument No. 104117079, a true and correct copy of which is attached hereto as **Exhibit E**. ("City Parcel").[1]

13. Finally, Mountain Cove Road, the entirety of which runs through Sections 11, 2, and 1 of Township 3 North, Range 2 East, Ada County, is a public road owned and maintained by the City for the use and enjoyment of the general public.

14. Along the northern edge of the SW¼NW¼ of Section 1, Township 3 North, Range 2 East, on the uninvolved part of Military Reserve discussed in footnote 1, Mountain Cove Road splits, with Mountain Cove Road continuing in a northeasterly direction. The other

---

[1] Adjoining the City Parcel to the southwest is a 457.12-acre parcel of real property also owned by the City, identified by the Ada County Assessor's office as Parcel No. S1002449000. A portion of Mountain Cove Road and a portion of Three Bears Trail (discussed *infra*), traverse this parcel in the S½NW¼ Section 1, Township 3 North, Range 2 East, but both the road and trail are public over this parcel and are not included in the claim for prescriptive easement set forth in this Complaint.

**COMPLAINT FOR QUIET TITLE - 4**

part of the split road marks the beginning of a dirt road that is today commonly referred to as #26 Three Bears Trail ("Three Bears Trail").

15. Sibling Rivalry had a survey undertaken of the Three Bears Trail over which it has a right to an easement, and a true and correct copy of this survey is attached hereto as **Exhibit F** ("Survey").

16. Upon information and belief, the Three Bears Trail substantially follows the path of a road that was originally built to serve mining and quarrying activity in the Curlew Gulch area and that said road existed as early as 1893.

17. Three Bears Trail continues over the northeastern corner of the uninvolved City parcel (hereinafter referred to as the "Public Segment"), and crosses into the City Parcel where it takes a ninety-degree turn to the right into a southeasterly direction, and then a ninety-degree turn to the left, back into a general northeasterly direction.

18. At this second ninety-degree turn, Three Bears Trail passes by a parking lot and facility owned by the City, marking the trailhead for Three Bears Trail.

19. Approximately one hundred yards to the east of this parking lot is a fence and locked gate ("Trailhead Gate"), barring public motor vehicle access to the remainder of Three Bears Trail.

20. Three Bears Trail then continues on in a northeasterly direction, meandering through the City Parcel (hereinafter referred to as the "City Segments"), crossing over into the Highland Livestock Parcel three times (hereinafter referred to as the "Highland Segments"), and then crossing into the BLM Parcel (hereinafter referred to as the "BLM Segment"), before finally entering the SR Parcel.

**COMPLAINT FOR QUIET TITLE - 5**

21. Further to the East, another road, Shaw Mountain Road, traverses the eastern portion of the BLM Parcel, in the SE¼ of Section 6 of Township 3 North, Range 3 East, Ada County.

22. Shaw Mountain Road is a public road owned and maintained by the City for the use and enjoyment of the general public.

23. For ease of reference, the various parcels discussed above, as well as the location of Mountain Cove Road, Three Bears Trail, the Trailhead Gate, and Shaw Mountain Road, are all illustrated in the demonstrative exhibit attached hereto as **Exhibit G**. A smaller version of this same demonstrative image is below:



24. On May 19, 1906, by way of a patent recorded in 1922, the United States Department of the Interior conveyed to the State of Idaho a tract of land that encompassed both the SR Parcel and the BLM Parcel. A true and correct copy of this patent is attached hereto as

**COMPLAINT FOR QUIET TITLE - 6**

**Exhibit H**. Thus, as of May 19, 1906, the State of Idaho owned both the SR Parcel and the BLM Parcel jointly.

25. By way of a deed executed on May 3, 1954 ("1954 SR Parcel Deed"), the State of Idaho severed the SR Parcel from the larger tract it owned and conveyed the SR Parcel to Minnie Shepherd (hereinafter "Shepherd") for $10 an acre, a total of $400. A true and correct copy of this deed is attached hereto as **Exhibit I**.

26. That 1954 SR Parcel Deed recites that on May 5, 1913, the SR Parcel was sold to Minnie E. Shepherd for $400 and that that sum "has been fully paid."

27. Upon information and belief, it was the year 1954 when full equitable title to the SR Parcel rested in Shepherd and all that remained to be done was to transfer the title. The SR Parcel was utilized, occupied, and accessed over the years by Minnie Shepherd and Shepherd's descendants, including her son Willoughby A. Shepherd, his wife Viola and their child, Minnie Shepherd's grandson, Paul E. Shepherd, and his wife, Dawn. Ultimately, as previously alleged, the SR Parcel was conveyed to Sibling Rivalry in 2020. Ron Shepherd, the sole member of Sibling Rivalry, is the great grandson of Minnie Shepherd.

28. The access to the SR Parcel by the Shepherds was always over the Three Bears Trail.

29. Minnie Shepherd and her husband, Charles Shepherd, had resided on the SR Parcel for some period prior to the early 1960s and used the Three Bears Trail to access the property.

30. At some point in the past, the SR Parcel was assigned an address of 3400 North Mountain Cove Road, Boise, Idaho 83712 by the US Postal Service and a mailbox was placed at

**COMPLAINT FOR QUIET TITLE - 7**

the junction of the Three Bears Trail and Mountain Cove Road for this purpose and mail was received there for many years. The mailbox still exists at the bottom of the Three Bears Trail.

31. Minnie Shepherd's grandson. Paul E. Shepherd. and his wife. Dawn. lived on the SR Parcel in the early 1960s and used the Three Bears Trail to access the property.

32. In 1965, Minnie Shepherd's son Willoughby A. Shepherd inherited and his wife Viola moved to and resided at the SR Parcel and utilized the Three Bears Trail to access the property until the time of Willoughby's death in 1992. Willoughby Shepherd was residing at the SR Parcel when he passed away on July 3, 1992 at the age of 80. The SR Parcel was the only residence of Viola and Willoughby from 1970 until the time of Willoughby's death in 1992.

33. On September 17, 2008, the State of Idaho deeded the BLM Parcel back to the United States, in a land exchange. *See* Exhibit B.

34. On information and belief, since before May 3, 1954, the date title to the SR Parcel was severed from the BLM Parcel and conveyed to Shepherd, the Three Bears Trail has provided the sole means of access to the SR Parcel.

35. On information and belief, Three Bears Trail was used by the State of Idaho from 1906 to 1954 to access the SR Parcel.

36. After an interest in the SR Parcel was conveyed to Shepherd in 1913, Shepherd and her family members regularly used Three Bears Trail to access the SR Parcel for use of that SR Parcel.

37. The use by Shepherd and her family members of the SR Parcel included Viola and Willoughby living and residing initially in a small but permanent camp trailer, then adding a second larger permanent camp trailer. These trailers remained on the SR Parcel for some time after Willoughby's death. A concrete patio was constructed and a large shop was built on a

**COMPLAINT FOR QUIET TITLE - 8**

concrete foundation while Viola and Willoughby were residing on the property as well. A septic system was installed on the property. Springs on the property were piped and used for domestic water in the residences and throughout the property. The remains of this pipe system and patio and large shop exist at the present time. Later, Robert "Bobby" Shepherd moved a camp trailer onto the property and built an addition on it and resided there for a time as well. Sibling Rivalry removed this camp trailer only recently, but the structure that was built to facilitate its use as a residence remains and is used for a storage shed. Several other buildings were either moved on to the property or built in order to accommodate livestock and poultry, such as chickens. The remains of these buildings are also present on the SR Parcel.

38. Today, the member of Sibling Rivalry accesses the SR Parcel by taking the public Mountain Cove Road until it forks, entering onto the public portion of Three Bears Trail, and then using the rest of Three Bears Trail to traverse the City Parcel, the Highland Livestock Parcel, and the BLM Parcel.

39. The member of Sibling Rivalry and its predecessors in interest have been using Three Bears Trail for many decades to access the SR Parcel.

40. The long-term use of Three Bears Trail by owners of the SR Parcel has been open, notorious, and known to the City and the BLM for many decades.

41. The long-term use by the member of Sibling Rivalry and its predecessors in interest of Three Bears Trail has been continuous and uninterrupted for many decades.

42. In the early 1960s, the City's predecessor in interest installed the Trailhead Gate. The Trailhead Gate was initially never locked, but was installed simply to contain livestock.

43. Later, each of the owners of property beyond the Trailhead Gate placed their own locks on the gate such that they could each pass through the gate vis-à-vis their own locks.

**COMPLAINT FOR QUIET TITLE - 9**

44. The placement of the several locks on the Trailhead Gate was/is in recognition of Sibling Rivalry's (and its predecessors in interest) as well as other land owners' rights to use Three Bears Trail for access purposes and to exclude others who did not have such rights.

45. This practice has continued since the City came in possession of the City Parcel. No permission was ever sought or given from the City to undertake this practice.

46. Sibling Rivalry and its predecessors in interest have never used Three Bears Trail upon the consent or permission of the City or the BLM, but have always used the trail as a matter of right.

47. If Sibling Rivalry was unable to use Three Bears Trail as a matter of right to access the SR Parcel, it would be legally landlocked, with no alternative legal route of access.

48. On or around November 3, 2022, Sibling Rivalry made known to the BLM its claim of a legal right to an easement over the portion of Three Bears Trail that traverses the BLM Parcel, i.e., the BLM Segment. A true and correct copy of that communication is attached as **Exhibit J.**

49. On November 22, 2022, the BLM denied and disputed Sibling Rivalry's claim to an easement over the BLM Segment. A true and correct copy of that communication is attached as **Exhibit K.**

## FIRST CAUSE OF ACTION
### Implied Easement by Prior Use (BLM Segment)

50. The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

51. Sibling Rivalry's First Cause of Action is plead against the BLM.

**COMPLAINT FOR QUIET TITLE - 10**

52. Under the federal Quiet Title Act, 28 U.S.C. § 2409a, the United States may be named as a party defendant in a civil action to adjudicate a disputed title to real property in which the United States claims an interest.

53. Specifically, the Quiet Title Act provides the means to adjudicate the existence of an easement over United States real property.

54. The BLM Parcel and the SR Parcel were held under a single unity of title by the State of Idaho, and were subsequently separated by deed.

55. From the time the two parcels were separated by deed to the present, there has been continuous use of the BLM Segment to access the SR Parcel.

56. Use of the BLM Segment is reasonably necessary to the proper enjoyment of the SR Parcel.

57. At the time of the common ownership of the two properties and for a significant time prior to, the State of Idaho and/or other parties used the BLM Segment in a manner that shows that the BLM Segment was intended to provide permanent access to the SR Parcel.

58. Accordingly, Sibling Rivalry is entitled to a judgment decreeing and declaring its right to an implied easement by prior use over the BLM Segment.

## SECOND CAUSE OF ACTION
### Quiet Title Implied Easement by Section 55-603 (BLM Segment)

59. The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

60. Sibling Rivalry's Second Cause of Action is plead against the BLM.

61. The BLM is the successor in interest to the State of Idaho's interest in the BLM Segment.

62. Under Idaho law:

**COMPLAINT FOR QUIET TITLE - 11**

> A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.

Idaho Code § 55-603.

63. Prior to the 1954 SR Parcel Deed at issue in this case, the BLM Segment was used to access the SR Parcel by parties including the grantor State of Idaho for a significant period of time.

64. As a result, at the time of the execution of the 1954 SR Parcel Deed, an easement for access over the BLM Segment in favor of the SR Parcel was created.

65. In 2008, when the State of Idaho deeded the BLM Parcel to the BLM, the BLM could only receive what the State of Idaho had to convey, i.e., a parcel that was subject to an easement over the BLM Segment, pursuant to section 55-603.

66. Accordingly, Sibling Rivalry is entitled to a judgment decreeing and declaring its right to an easement by operation of Idaho Code Section 55-603 over the BLM Segment.

## THIRD CAUSE OF ACTION
**Implied Easement by Necessity (BLM Segment)**

67. The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

68. Sibling Rivalry's Third Cause of Action is plead against the BLM.

69. Sibling Rivalry's Third Cause of Action is plead in the alternative to its First and Second Causes of Action.

70. Under the federal Quiet Title Act, 28 U.S.C. § 2409a, the United States may be named as a party defendant in a civil action to adjudicate a disputed title to real property in which the United States claims an interest.

**COMPLAINT FOR QUIET TITLE - 12**

71. Specifically, the Quiet Title Act provides the means to adjudicate the existence of an easement over United States real property.

72. The BLM Parcel and the SR Parcel were held under a single unity of title by the State of Idaho, and were subsequently separated by deed.

73. If an easement cannot be implied by prior use under the First and Second Causes of Action, then there is a need for legal access over the BLM Segment.

74. A necessity existed at the time of severance for the BLM Segment to provide legal access to the SR Parcel.

75. There remains a great necessity for this particular right of way today.

76. Accordingly, Sibling Rivalry is entitled to a judgment decreeing and declaring its right to an implied easement by necessity over the BLM Segment.

## FOURTH CAUSE OF ACTION
### Prescriptive Easement (City Segments)

77. The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

78. Sibling Rivalry's Fourth Cause of Action is plead against the City.

79. Sibling Rivalry and its predecessors in interest have made open, notorious, continuous, uninterrupted use, under claim of right, of the City Segments, with the knowledge of the owners of the City Parcel, for the requisite prescriptive period.

80. Accordingly, Sibling Rivalry is entitled to a judgment decreeing and declaring its right to an easement by prescription over the City Segments and the scope of the same.

**COMPLAINT FOR QUIET TITLE - 13**

## FIFTH CAUSE OF ACTION
**Implied Easement by Necessity (Shaw Mountain Road)**

81. The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

82. Sibling Rivalry's Fifth Cause of Action is plead against the BLM.

83. Although the City of Boise has encouraged Sibling Rivalry to avail itself of access over an alternative access route to Shaw Mountain Road,[2] Sibling Rivalry's Fifth Cause of Action is plead in the alternative and only in the event that Sibling Rivalry is found not to have a legal right of access over the City Parcel and the BLM Segment. Sibling Rivalry believes that constructing a new route providing access to Shaw Mountain Road would be expensive and much more disruptive to the quality and character of the adjoining public lands than the historical access route to its property.

84. Sibling Rivalry specifically requests that a decision in the case be made on the other counts and only in the event that Sibling Rivalry be found not to have legal access over the City Parcel and the BLM Segment that this Court then proceed to decide this Cause of Action.

85. Under the federal Quiet Title Act, 28 U.S.C. § 2409a, the United States may be named as a party defendant in a civil action to adjudicate a disputed title to real property in which the United States claims an interest.

86. Specifically, the Quiet Title Act provides the means to acquire an easement over United States real property.

87. The BLM Parcel and the SR Parcel were held under a single unity of title by the State of Idaho, and were subsequently separated by deed.

---

[2] See January 13, 2023 letter from Deputy City Attorney Darrell G. Early to counsel for Sibling Rivalry attached hereto as **Exhibit L**.

**COMPLAINT FOR QUIET TITLE - 14**

88. The closest public road to the SR Parcel at the time of severance, and today, is Shaw Mountain Road, which traverses the BLM Parcel.

89. Shaw Mountain Road follows the path of the original Toll Road that connected Boise City and Morris Creek and was in existence at least by 1893, and which existed at the time of the severance of the SR Parcel from the BLM Parcel.

90. Absent a legal right of access via Three Bears Trail, a necessity existed at the time of severance for a legal right of access to the SR Parcel.

91. To the extent Three Bears Trail did not provide legal access to the SR Parcel, and given the resulting necessity for access, it can be implied in the severance of the SR Parcel from the BLM Parcel that the SR Parcel was to be accessed via an easement that linked the SR Parcel to Shaw Mountain Road.

92. To the extent Three Bears Trail does not provide legal access to the SR Parcel today, there existed at the time of severance a necessity, and there remains to this date a great necessity, for this particular right of way.

93. Accordingly, Sibling Rivalry is entitled to a judgment decreeing and declaring its right to an implied easement by necessity providing it access to Shaw Mountain Road and also affording that once a right is so established, that this Court reserve jurisdiction so that Sibling Rivalry may have appropriate surveys and other engineering work done such that an appropriate access route may be specifically declared later by this Court over the BLM Parcel.

## COSTS AND ATTORNEYS FEES

1. Plaintiff Sibling Rivalry seeks an award of its reasonable costs incurred in this matter pursuant to F.R.C.P. 54 and 28 U.S.C. § 2412 in such amount as this Court may find reasonable at the appropriate time in these proceedings.

**COMPLAINT FOR QUIET TITLE - 15**

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Sibling Rivalry prays for judgment against Defendants as follows:

1. To find in favor of Sibling Rivalry and against Defendants on all causes of action in Sibling Rivalry's Complaint and for judgment in favor of Sibling Rivalry and against Defendants.

2. For a judgment decreeing and declaring, and suitable for recording in the real property records, that:

    a. Sibling Rivalry has an easement appurtenant to the SR Parcel over the City Segments and the BLM Segment of Three Bears Trail in accordance with the Survey;

    b. said easement is for the purpose of accessing the SR Parcel;

    c. the easement rights include ingress and egress, use, operation, maintenance, repair, replacement, relocation, or removal of any improvements located within the City Segments and the BLM Segment of Three Bears Trail; and

    d. the easement extends to tenants, subtenants, agents, licensees, and invitees of the SR Parcel.

3. Or, in the alternative, for a judgment decreeing and declaring, and suitable for recording in the real property records, that:

    a. Sibling Rivalry has an easement appurtenant to the SR Parcel that provides access to Shaw Mountain Road over the BLM Parcel;

    b. said easement is for the purpose of accessing the SR Parcel;

    c. the easement rights include ingress and egress, use, operation, maintenance, repair, replacement, relocation, or removal of any improvements located within

**COMPLAINT FOR QUIET TITLE - 16**

    the easements;

    d. the easement extends to tenants, subtenants, agents, licensees, and invitees of the SR Parcel; and

    e. that this Court reserve jurisdiction so that Sibling Rivalry may have appropriate surveys and other engineering work done such that an appropriate access route may be specifically declared later by this Court over the BLM Parcel

4. For such other and further relief as the Court deems just and equitable.

DATED this 30th day of January, 2022.

                                      GIVENS PURSLEY LLP

                                      */s/ Thomas E. Dvorak*
                                      Thomas E. Dvorak
                                      Blake W. Ringer
                                      Attorneys for Plaintiff