UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SIBLING RIVALRY DIVERSE SERVICES, LLC, an Idaho limited liability company,<br><br>      Plaintiff,<br><br>      v.<br><br>CITY OF BOISE, a political subdivision of the State of Idaho; UNITED STATES OF AMERICA; and UNITED STATES OF AMERICA BUREAU OF LAND MANAGEMENT, a governmental entity,<br><br>      Defendants. | Case No. 23-cv-00047-AKB<br><br>**MEMORANDUM DECISION AND ORDER DENYING CITY OF BOISE'S MOTION AND BLM'S MOTIONS TO DISMISS AMENDED COMPLAINT** |

Pending before the Court are Defendant Bureau of Land Management's motion to dismiss (Dkt. 12), Defendant United States of America's joinder in that motion (Dkt. 21), and Defendant City of Boise's motion to dismiss. (Dkt. 26). Each seeks the dismissal of the Amended Complaint for Quiet Title of Plaintiff Sibling Rivalry Diverse Services, LLC. (Dkt. 9). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court denies the motions.

## I. BACKGROUND

Sibling Rivalry owns a landlocked, forty-acre parcel of real property in the Curlew Gulch area in the Boise Foothills (SR Parcel). At issue is Sibling Rivalry's right to access the SR Parcel

from the west via the Three Bears Trail. In May 1913, the State of Idaho sold an interest in the SR

Parcel to Minnie Shepherd for $400. (Dkt. 9 at ¶¶ 9, 27). In 1954, the State executed a deed on

Minnie's behalf reciting the 1913 sale and conveying the SR Parcel in fee simple to her. (*Id.* at

¶¶ 27-28, Ex. I).

At some point after 1913, Minnie and her husband began residing on the SR Parcel and did

so until the early 1960s. (*Id.* at ¶ 30). After the early 1960s, Minnie's grandson, Paul Shepherd,

and his wife resided on the property. (*Id.* at ¶ 32). Then, in 1965, Minnie's son, Willoughby

Shepherd inherited the property from Minnie, and Willoughby and his wife resided on the SR

Parcel until Willoughby's death in 1992. (*Id.* at ¶ 34). Although Sibling Rivalry does not allege

the SR Parcel's ownership between 1992 and 2020, it alleges the property was eventually conveyed

to Sibling Rivalry in 2020. The sole member of Sibling Rivalry is Minnie's great grandson, Ron

Shepherd. (*Id.* at ¶ 28).

Historically, the Shepherd family has "always" and "regularly" accessed the SR Parcel

over the Three Bears Trail. (Dkt. 9 at ¶¶ 29, 39, 41). The existence of the Trail dates to early

Statehood. Allegedly, it was built in 1893 to access mining and quarrying activities in the Curlew

Gulch area. (Dkt. 9 at ¶ 17). Presently, the Trail traverses the property of three different landowners

before reaching the SR Parcel: The Trail originates at a public road, Mountain Cove Road, travels

over land which the City owns (City Parcel), through the land of Highland Livestock & Land

Company, Ltd.,[1] and then finally over land which the United States owns. The BLM manages the

federal government-owned land (BLM Parcel). After traveling over the City Parcel, Highland

Livestock's land, and the BLM Parcel, the Trail reaches the SR Parcel.

---

[1]    Sibling Rivalry's right to travel on Highland Livestock's land is not at issue because
Sibling Rivalry has a Residential Easement Agreement with Highland Livestock. (Dkt. 9 at ¶ 12,
Ex. D).

The history of the ownership of the SR Parcel and the BLM Parcel is important to the resolution of Defendants' motions to dismiss.[2] Originally, the United States owned the foothills land at issue. In 1906, however, the United States Department of Interior conveyed the SR Parcel and BLM Parcel, among other lands, to the State of Idaho. As previously noted, the State then sold an interest in the SR Parcel to Minnie in 1913. A 1954 Deed from the State recited Minnie's earlier payment for the SR Parcel, provided its legal description, and conveyed the SR Parcel to her in fee simple "with the appurtenances thereon." (Dkt. 9-9).

The State's Governor, who was also the President of the State Board of Land (Land Board), executed the 1954 Deed, and the Secretary of State and a Land Board Commissioner countersigned it. (*Id.*). The State retained the lands adjacent to the SR Parcel until 2008 when it conveyed the lands surrounding the SR Parcel, including the BLM Parcel, to the United States. As a result of this 2008 conveyance, the United States' land surrounds the SR Parcel, which is now landlocked.

Sibling Rivalry filed an amended complaint against the City, the United States, and the BLM to quiet title to an easement over the Three Bears Trail through Defendants' real property to assure access to the SR Parcel. (Dkt. 9). Sibling Rivalry alleges claims against the United States and BLM under the Quiet Title Act, 28 U.S.C. § 2409a. Further, Sibling Rivalry alleges the Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Sibling Rivalry's claim against the City. As against the City, Sibling Rivalry alleges a prescriptive easement over the Trail, namely that Sibling Rivalry and its predecessors have "made open, notorious, continuous, uninterrupted use, under claim of right, of the City [land], with the knowledge of the owners of the City Parcel, for the requisite prescriptive period." (Dkt. 9 at ¶ 86). As against the United States and the BLM,

---

[2]      Because Sibling Rivalry does not allege specifics regarding the City Parcel relative to the SR Parcel and because the City's motion to dismiss is jurisdictional in nature, the Court is not aware of the specifics of the City Parcel.

Sibling Rivalry alleges an implied easement over the Trail under three different theories: an easement implied by prior use, by necessity, and under Idaho Code § 55-603. Additionally, Sibling Rivalry alleges an alternative claim against the United States for an implied easement by necessity from Shaw Mountain Road over BLM-managed lands via Shane's Loop Trail to the southside of the SR Parcel.

The BLM filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim, and the United States joined that motion. (Dkts. 12, 21). In addition to arguing the BLM is not a proper party to a QTA action, the upshot of the United States' motion is that no legal theory supports Sibling Rivalry's claim of an easement over the BLM Parcel. Meanwhile, the City argues this Court does not have supplemental jurisdiction over Sibling Rivalry's claim against it. (Dkt. 26).

## II. ANALYSIS

### A. The United States' Motion to Dismiss

#### 1. Legal Standard

The United States moves to dismiss Sibling Rivalry's claims for implied easement under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A dismissal pursuant to Rule 12(b)(6) is appropriate where a complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short and plain statement of the claim, showing the pleader is entitled to relief and giving the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a Rule 12(b)(6) motion, a claim requires a complaint with enough factual basis which, if taken as true, states a plausible claim for relief. *Id.* at 556. A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference the defendant is liable for the alleged misconduct. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

### 2.  BLM is Not a Proper Party

Sibling Rivalry alleges its QTA claims against both the United States and BLM. That Act provides that "the United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a. The United States asserts Sibling Rivalry improperly named the BLM as a defendant.

The United States is correct, and Sibling Rivalry does not argue otherwise. The proper defendant under the QTA is the United States. The QTA waives sovereign immunity only as to the United States and is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). The Act expressly provides for relief against the United States. *See* 28 U.S.C. § 2409a(a); *Block*, 461 U.S. at 280, 284. If Sibling Rivalry had only alleged the QTA claims against the BLM without naming the United States, the Court would have been required to construe the action as against the United States for the purposes of the QTA. *Saving Am.'s Mustangs v. Bureau of Land Mgmt.*, No. 3:16-CV-00733-RCJ-VPC, 2017 WL 1371261, at *2 (D. Nev. Apr. 13, 2017)

(citing *Wright v. Gregg*, 685 F.2d 340, 341-42 (9th Cir. 1982)) (reversing dismissal of QTA claim for lack of jurisdiction where plaintiff failed to name United States as defendant). Because Sibling Rivalry named the United States as a defendant, the BLM is not a necessary party and is dismissed.

###    3.    Sibling Rivalry's Claims Against the United States

The United States challenges each of Sibling Rivalry's claims against it. The upshot of the United States' challenge is that no legal theory of an implied easement supports Sibling Rivalry's claims as a matter of law. Generally, "[f]ederal law governs a claim of easement over lands owned by the United States." *McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008).  Federal courts, however, may properly look to state law as an aid in determining the application of the specific facts if the state law is compatible with the QTA's purpose and will best effectuate federal policy. *Vincent Murphy Chevrolet Co., Inc. v. United States*, 766 F.2d 449, 451 (10th Cir. 1985); *see also United States v. Nationwide Mut. Ins. Co.*, 499 F.2d 1355, 1356 n.2, 1356-57 (9th Cir. 1974) (noting that "where there has been no clear federal law to apply, federal courts have referred to state law to provide the appropriate rule" and that "in certain cases of significant local interest, such as cases involving title to land, state law has been held to apply").

"An easement appurtenant is a right to use a certain parcel, the servient estate, for the benefit of another parcel, the dominant estate." *Hodgins v.* Sales, 76 P.3d 969, 974 (Idaho 2003). An easement appurtenant cannot be separated from the dominant estate. *Id.* Rather, once created, the easement becomes fixed as an appurtenance to the real property. *Id.*

Generally, "[e]asements may be implied from a landowner's use of part of his property (the quasi-servient tenement) for the benefit of another part (the quasi-dominant tenement)." The Law of Easements & Licenses in Land § 4:15 (2024); *Patterson v. Buffalo Nat'l River*, 76 F.3d 221, 225-26 (8th Cir. 1996) ("When an owner of a single parcel of land uses part of his land to benefit

a second part, courts may find that a quasi-easement exists; the land benefited is called 'the quasi-dominant tenement' and the property used is called the 'quasi-servient tenement.'"). "When the parcel is divided, the quasi-easement becomes an implied easement corresponding to a pre-existing quasi-easement or, put more simply, an easement by implication." *Patterson*, 76 F.3d at 226 (internal quotation marks omitted). The common law provides for two types of implied easements—implied by prior use and implied by necessity. *See, e.g.*, *Aizpitarte v. Minear*, 508 P.3d 1260, 1268, 1275 (Idaho 2022) (discussing easements implied from prior use and by necessity).

For purposes of determining the creation of an implied easement, the focus is on the conveyance which originally severed the properties' unity of interest. 25 AM. JUR. 2D *Easements and Licenses* § 23 (2024) ("When inquiring into the existence of an implied quasi-easement, only the circumstances at the time of the original conveyance are relevant."); *see also Aizpitarte*, 508 P.3d at 1267 (presuming "if an access was in use at the time of severance, such use was meant to continue"); *Malulani Group, Ltd. v, Kaupo Ranch, Ltd.*, 329 P.3d 330, 335 (Haw. Ct. App. 2014) (same). In this case, the State last owned the properties at issue in a unified interest. The State severed that unity of interest in 1954 when it conveyed the SR Parcel to Minnie.

At issue is whether this conveyance from the State to Minnie created an implied easement for the dominant estate, the SR Parcel, over the servient estate, the BLM Parcel, which the State eventually sold to the United States in 2008. In support of Sibling Rivalry's assertion that an implied easement arose over the Three Bears Trail crossing the BLM Parcel to the SR Parcel when the State severed the property, Sibling Rivalry alleges three claims offering three different theories of easement by implication: a statutorily implied easement under Idaho Code § 55-603, an implied easement by prior use, and an implied easement by prior necessity.

### a.  Implied Easement by Necessity

The Ninth Circuit has ruled that "the doctrine of easement by necessity applies, generally

against the United States." *McFarland*, 545 F.3d at 1111. Under Ninth Circuit authority:

> An easement of necessity is created when: (1) the title of two parcels of land was
> held by a single owner; (2) the unity of title was severed by a conveyance of one of
> the parcels; and (3) at the time of the severance, the easement was necessary for the
> owner of the severed parcel to use his property.

*Id.* (quoting *Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1266 (9th Cir. 2006)).

The Idaho Supreme Court has stated the elements of an implied easement by necessity

somewhat differently:

> To show an implied easement by necessity, the claimant must prove (1)
> unity of title and subsequent separation of the dominant and servient estates; (2)
> necessity of the easement at the time of severance; and (3) great present necessity
> for the easement.

*Aizpitarte*, 508 P.3d at 1275 (internal quotation marks omitted). Unlike the federal elements, Idaho

requires "great present necessity" to establish an easement by necessity, meaning "when the

easement is the *only* access to the claimant's property." *Id.* Regardless, both jurisdictions provide

an implied easement by necessity is extinguished if the necessity abates. *Fitzgerald Living Trust*,

460 F.3d at 1266; *Aizpitarte*, 508 P.3d at 1276.

### b.  Implied Easement by Prior Use

Under Idaho law, establishing an easement by prior use requires three elements:

> (1) Unity of title or ownership and a subsequent separation by grant of the dominant
> estate; (2) apparent continuous use long enough before separation of the dominant
> estate to show that the use was intended to be permanent; and (3) the easement must
> be reasonably necessary to the proper enjoyment of the dominant estate.

*Aizpitarte*, 508 P.3d at 1267 (quoting *Spectra Site Commc'ns, Inc. v. Lawrence*, 377 P.3d 75, 79

(Idaho 2016)).

The Ninth Circuit apparently has not previously set forth the elements of a federal common law implied easement by prior use.[3] Other federal courts, however, have relied on state law to consider whether an implied easement by prior use arose against the United States. *See Baker's Peak Landowner's Ass'n, Inc. v. United States*, No. CIV.A. 00-S-519, 2001 WL 34360431, at *3-4 (D. Colo. Aug. 2, 2001) (relying on state law to consider whether implied easement by prior use arose against United States); *see also Lach v. United States*, No. 2:08-CV-251, 2010 WL 5027145, at *4 (N.D. Ind. Dec. 2, 2010) (same). The Ninth Circuit has ruled, though, that

> [A]pplication of the common-law doctrine of easement implied by prior use is not appropriate . . . where title was taken by way of a public grant. In a public grant nothing passes by implication, and  unless the grant is explicit [regarding] the property conveyed, a construction will be adopted which favors the sovereign.

*McFarland*, 545 F.3d at 1112 (quotation omitted). A "public grant" is synonymous with a conveyance from the United States via a patent. *See* Patent, BLACK'S LAW DICTIONARY (11th ed. 2019) (stating terms are synonymous). In other words, the Ninth Circuit has ruled an easement by prior use is not implied in a patent from the United States conveying property.[4]

### c. Statutorily Implied Easement

Finally, the Idaho statute under which Sibling Rivalry alleges an implied easement, I.C. § 55-603, provides:

> A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.

---

[3]     Sibling Rivalry cites to Idaho authority for the elements of an implied easement from prior use. (Dkt. 27 at p. 5) (citing *Akers v. Mortensen*, 205 P.3d 1175, 1181 (Idaho 2009)). The Government does dispute an implied easement is a plausible claim against the United States.

[4]     The United States notes this rule that an easement by prior use is not appropriate "where title was taken by way of public grant." As discussed below, however, the conveyance at issue from the State to Minnie was not a public grant; i.e., it was not a patent from the United States.

This statute was in effect when the State conveyed the SR Parcel to Minnie in 1954 and provides that a transfer of real property includes all easements attached to the property. *Davis v. Peacock*, 991 P.2d 362, 368 (Idaho 1999) (explaining I.C. § 55-603 provides "an implied easement by prior use is appurtenant to the land and therefore passes with all subsequent conveyances of the dominant and servient estates").

Generally, Sibling Rivalry's allegations satisfy the pleading requirement to survive a Rule 12(b)(6) motion. Namely, Sibling Rivalry alleges an adequate factual basis, which if true, states plausible claims for relief. *See Twombly*, 550 U.S. at 556 (discussing standard to survive Rule 12(b)(6) motion). For example, Sibling Rivalry alleges that the State had a common ownership in both the SR Parcel and the BLM Parcel before conveying an interest in the SR Parcel to Minnie in 1954; the State used the Three Bears Trail from 1906 until 1954 to access the SR Parcel; the Trail is the sole means of accessing the SR Parcel; the Shepherds' access to the SR Parcel, including to date, has always been over the Trail; the Shepherds used the Trail for purposes of constructing a residence and have repaired and maintained the Trail; and their long-term use of the Trail has been continuous and uninterrupted for many decades. (Dkt. 9 at ¶¶ 25, 26, 29, 33, 35, 37, 38, 41, 46).

### 4.  The United States' Asserted Legal Defenses

#### a.  I.C. § 58-603

Despite that Sibling Rivalry's allegations satisfy the pleading requirements to state claims for an implied easement across the BLM Parcel, the United States asserts all of Sibling Rivalry's claims against it fail as a matter of law for various reasons. First, the United States argues I.C. § 58-603 provides the "exclusive means" by which Sibling Rivalry could have obtained an easement over State land. (Dkt. 12-1 at pp. 4-5). That statute provides, in part:

> The state board of land commissioners is hereby empowered to grant, over and upon any land owned or controlled by the state of Idaho, rights of way for railroad, telegraph, telephone and electric lines, pipelines for natural and manufactured gas, rights of way for highway purposes, and rights of way for any other public or private purpose or beneficial use. Application for such right of way must be accompanied by a map, in duplicate, showing the course of such right of way over each smallest legal subdivision of land, and the amount of land required for said right of way. The said right of way may be granted by the state board of land commissioners upon such terms and upon such compensation being paid therefor as the said board may determine: provided, that no land shall be sold under the provisions of this section for less than ten dollars ($10.00) per acre.

I.C. § 58-603.

In support of the United States' assertion that § 58-603 provides the exclusive means for creating an easement over State land, the United States reasons the Idaho Constitution delegates "the power to control the use and disposition of Idaho public lands," including easements, to the Land Board. (Dkt. 12-1 at p. 5). In support, the United States cites Sections 7 and 8 of Article IX, Education & School Lands, of the Idaho Constitution. These sections establish the Land Board and specify it has the duty to provide for, among other things, the sale of "all the lands." These sections, however, do not specifically address either the creation or the disposition of an easement over State land, and the United States does not cite any authority construing these sections as limiting an easement's creation on State land. Some authority suggests they do not. *See United States v. Fuller*, 20 F. Supp. 839, 841 (Idaho 1937) (ruling section 8, article 9, of Idaho Constitution did not prohibit State from conveying easement for ditch by way of statute).

The only other support the United States offers for its argument that § 58-603 is the exclusive means of creating an easement over State land is that "like federal land grants, State land grants are to be strictly construed in favor of the sovereign" and "[n]othing passes by implication." (Dkt. 12-1 at p. 4). Again, however, the United States does not cite any authority, Idaho or otherwise, supporting the proposition that an easement may not be implied against the State.

MEMORANDUM DECISION AND ORDER - 11

The authorities the United States does cite in support of its assertion that "nothing passes by implication" against the State are inapposite. Both *Rice v. Minnesota & N.W.R. Co.*, 66 U.S. 358, 380 (1861), and *McFarland v. Kempthorne*, 545 F.3d 1106, 1112 (9th Cir. 2008), construe easements as they relate to the federal government—not to a state government. *Piedmont Power & Light Co. v. Town of Graham*, 253 U.S. 193, 194-95 (1920), addresses whether a utility company, having a contract with a municipality, stated a claim for relief against that municipality for giving another utility company nonexclusive grant of rights to the municipality's streets. Finally, the Supreme Court in *Phillips Petroleum Co. v. Miss.*, 484 U.S. 469, 475 (1988), does state that "Individual States have the authority to define the limits of lands held in public trust and to recognize private rights in such lands as they see fit." That case, however, addresses "whether the State of Mississippi, when it entered the Union in 1817, took title to the lands lying under water that were influenced by the tide running in the Gulf of Mexico." *Id.* at 472. The case does not address an easement by implication against the State.

None of these cases support the United States' assertion that an easement may not be implied against the State or that § 58-603 is the exclusive means of obtaining an easement over State lands. Moreover, certain documents Sibling Rivalry attached to and filed in support of its complaint suggest the State may establish an easement over State land other than under § 58-603. For example, the 2008 Deed by which the State conveyed the BLM Parcel to the United States identifies numerous easements, suggesting these easements did not have to be established by application to the Land Board. (Dkt. 9-2 at p. 5, ¶ 19; *see also* Dkt. 9-9 at p. 2 (conveying property "with the appurtenances thereon")). Moreover, requiring the State to convey land by deed and then requiring the grantee to file an application to the Land Board for a right of way over that same land seems redundant. Finally, the 1954 Deed to Minnie expressly states the SR Parcel is conveyed

"with the appurtenances thereon," which arguably includes easements. (Dkt. 9-9 at p. 2). For these reasons, the United States has failed to establish that § 58-603 is the exclusive means for Sibling Rivalry to obtain an easement over the BLM Parcel and that an implied easement for the benefit of the SR Parcel could not have otherwise been created.

### b. Unity of Interest

The United States also argues Sibling Rivalry cannot state a claim for an implied easement either by prior use or by necessity because it cannot show unity of title—an element necessary to establish both an implied easement by prior use and by necessity. (Dkt. 12-1 at p. 6). Specifically, the United States argues that "under Idaho law, unity of title cannot be established in State land." (*Id.* at p. 7). The case law the United States cites, however, does not support this proposition.

In support of its argument, the United States cites *Backman v. Lawrence*, 210 P.3d 75 (Idaho 2009). In that case, the Backmans asserted a right to access their property based on, among other theories, an easement by necessity. *Id.* at 78. The Idaho Supreme Court began its analysis by noting the United States owned all of the properties at issue prior to 1904. *Id.* Further, it noted that "Idaho public policy favors full use of lands" and that a "universally established principle" is a conveyance of landlocked property gives rise to an easement by necessity in favor of the grantee. *Id.* at 79-80.

The *Backman* Court, however, explained that "Idaho courts have not used this public policy to expand the unity of title requirement to allow for it to be satisfied by common ownership in the United States" and that "in other Idaho cases addressing easements by necessity, unity of ownership has only been found in private owners." *Id.* at 80. The Court concluded the policy of implying an easement by necessity creates a "fundamental problem" where "the United States Government [was] the original grantor." *Id.* Relying on *Guess v. Azar*, 57 So. 2d 443, 444-45 (Fla.

**MEMORANDUM DECISION AND ORDER - 13**

1952), it described this problem as providing an implied easement for the earliest grantee (and his successors) of land originally held in unity by the United States over all surrounding and adjacent lands. *Backman*, 210 P.3d at 80.

Notably, *Backman* did not address whether the unity of title requirement is satisfied by common ownership of the State. The *Backman* Court did quote *Roberts v. Swim*, 784 P.2d 339, 345 (Ct. App. 1989), in which the Idaho Court of Appeals stated that "original ownership by the public *or the state* is not sufficient to constitute the necessary unity of ownership." (Emphasis added). Relying on this statement, however, poses several problems. For example, the statement is dicta, as the *Backman* Court recognized; the *Roberts* Court never identified whether it was addressing the unity of title in the federal government or in the state government; and the *Backman* Court never adopted the statement in its entirety despite quoting it.

Additionally, the "fundamental problem" explained in *Blackman* does not necessarily arise where the State has unity of title because, unlike the United States, the State did not hold title to *all* the land in the State at one time. Rather, portions of those lands located within the Idaho Territory or State passed directly from the United States to private owners. *See, e.g.*, Homestead Act of 1862, Public Law 37-64, 12 Stat. 392 (providing adult citizen or intended citizen, who had never borne arms against government could claim 160 acres of surveyed government land).

Moreover, at least one district court has concluded that Ninth Circuit authority provides common ownership by a government can satisfy the unity of interest requirement. In *Malulani*, 329 P.3d at 336, the court cited *McFarland*, 545 F.3d at 1111, and *United States v. Dunn*, 478 F.2d 443, 444 n.2 (9th Cir. 1973), in support of the proposition that:

> [P]rior ownership by the government *can* serve to meet the unity of ownership requirement, particularly when an easement by necessity is implied *against* the government entity or over land which was *held* by the government at the time the properties were severed.

MEMORANDUM DECISION AND ORDER - 14

*Malulani*, 329 P.3d at 336 (describing this rule as "modern trend").

Arguably, Ninth Circuit authority applies for purposes of analyzing Sibling Rivalry's claim of an implied easement by necessity over the BLM Parcel. *See, e.g.*, *McFarland*, 545 F.3d at 1110 ("Federal law governs a claim of easement over lands owned by the United States."). The United States, however, does not address either which authority applies—Idaho or Ninth Circuit—or why the rule in *Backman* applies despite only ruling that the United States' common ownership cannot establish unity of title.

For these reasons, no law supports the proposition, as the United States argues in this case, that the State's common ownership of the SR Parcel and the BLM Parcel cannot establish the unity of interest requirement for an implied easement. Absent more clarity on the applicable law, this Court declines to rule at this time that the State's common ownership of the SR Parcel and the BLM Parcel cannot satisfy the unity of title requirement for establishing an implied easement.

### c. **I.C. § 55-603**

The United States asserts Sibling Rivalry cannot state a claim for an implied easement under § 55-603, which provides "an implied easement by prior use is appurtenant to the land and therefore passes with all subsequent conveyances of the dominant and servient estates." *Davis*, 991 P.2d at 368. In support, the United States argues § 55-603 is inapplicable against the State because it refers only to the transfer of the estate of a "person," and I.C. § 73-114(1)(d) provides the term "'person' includes a corporation." (Dkt. 12-1 at p. 6). The United States cites no case law in support of its interpretation.

In response, Sibling Rivalry argues that, under principles of statutory construction, the word "include" means the provision is not stating an exhaustive list; "person" is not limited "only to natural persons and corporations"; and BLM's interpretation of "person" is "contrary to the

presumption of the nonexclusive 'include.'" (Dkt. 27 at p. 11). In support of its assertion that the term "person" in § 55-603 includes the State, Sibling Rivalry cites *S. Florida Water Mgmt. Dist. v. Layton*, 402 So. 2d 597, 598 (Fla. Ct. App. 1981), in which the court construed the term "person" in a Florida statute providing for implied easements to include the State.

Although conceivably § 55-603 may not apply to create an easement when the State transfers land, absent a more fulsome discussion of the rules of statutory construction and with nothing more than a hypothesized application or nonapplication of § 55-603 to a conveyance of State land, the Court declines to rule § 55-603 is unavailable to establish an implied easement over the BLM Parcel for the benefit of the SR Parcel.

### d.  FLPMA and ANILCA

The United States argues Sibling Rivalry cannot state a claim for implied easement by necessity because Sibling Rivalry "could seek access [to the SR Parcel] through other means," and as a result, Sibling Rivalry cannot establish "great present necessity" as Idaho law requires. (Dkt. 12-1 at p. 8). In support, the United States relies on the Federal Land Policy Management Act (FLMPMA), 43 U.S.C. §§ 1701-1785, and Alaska National Interests Lands Conservation Act (ANILCA), 16 U.S.C. §§ 3101-3126. It contends these statutes provide a means by which Sibling Rivalry "may obtain access to its property." (Dkt. 12-1 at p. 8).

The United States' argument fails for several reasons. First, the ANILCA protects the right to access nonfederal lands within the boundaries of the National Forest System. *Mountain States Legal Found. v. Espy*, 833 F. Supp. 808, 816 (D. Idaho 1993). The BLM lands surrounding the SR Parcel, however, are not within the boundaries of the National Forest System. Second, the United States' argument is premised on the element under Idaho law requiring "great present necessity" for an implied easement by necessity. The Ninth Circuit, however, does not require a "great present

necessity." *Compare McFarland*, 545 F.3d at 1111 (stating elements) *with Aizpitarte*, 508 P.3d at 1275 (same). Although the United States argues State law applies to Sibling Rivalry's claims for an implied easement by necessity, generally state law applies only in the absence of applicable federal law, and the Ninth Circuit does not require proof of a "great present necessity" to imply an easement by necessity. *Vincent*, 766 F.2d at 451 (looking to state law as an aid is proper if the law is compatible with QTA's purpose and will effectuate federal policy). Moreover, the cases the United States cites are not QTA cases. (Dkt. 28 at p. 7 n.4). *See Near v. Dep't of Energy*, 259 F. Supp. 2d 1055, 1059 (E.D. Cal. 2003) (considering California easement law to determine whether plaintiff encroached on government easement). Third, the BLM has already allegedly denied Sibling Rivalry's application for a FLPMA license because "Sibling Rivalry lacked the proof of recorded legal access to the BLM Parcel." (Dkt. 27 at p. 18).

### e.   Title Not Severed by Grant of Dominant Estate

Finally, the United States argues Sibling Rivalry's "claim for an easement by prior use . . . fails because unity of title was not severed by grant of the dominant estate." (Dkt. 12-1 at p. 7). Explaining its argument, the United States notes the State first conveyed the SR Parcel, which is the dominant estate, and then conveyed the BLM Parcel, which is the servient estate, "decades after" conveying the SR Parcel. (Dkt. 12-1 at pp. 8-9). This argument misapprehends the analysis for determining whether the severance of the unity of interest in the State created an implied easement. At issue is whether that severance in 1954 created an easement over State land for the benefit of the transferred property, the SR Parcel. For purposes of this analysis, the State's land (which included the BLM Parcel) is the servient estate, and the SR Parcel is the dominant estate.

Because Sibling Rivalry sufficiently alleges its claims against the United States and none of the United States' arguments establish as a matter of law that Sibling Rivalry cannot assert its

claims, the Court denies the United States' motion to dismiss. Accordingly, the Court must resolve whether it should exercise supplemental jurisdiction over Sibling Rivalry's claim against the City.

## B. The City's Motion to Dismiss

### 1. Legal Standard

The City moves to dismiss Sibling Rivalry's state law claim for a prescriptive easement over the Three Bears Trail across the City Parcel, arguing the Court lacks supplemental jurisdiction over that claim under 28 U.S.C. § 1367. Rule 12(b)(1) of the Federal Rules of Civil Procedure provides a defendant may move to dismiss an action for "lack of subject-matter jurisdiction." Courts "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A motion to dismiss for lack of supplemental jurisdiction is properly brought under Rule 12(b)(1). The plaintiff bears the burden of establishing subject-matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The doctrine of supplemental jurisdiction is flexible, "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

### 2. Supplemental Jurisdiction

Section 1367 governs the district court's supplemental jurisdiction. Specifically, it provides that, with certain exceptions, "the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

As one district court has noted, "[t]here does not appear to be one definitive method for determining what qualifies" as a common nucleus of operative fact. *Carne v. Stanislaus Cnty. Animal Servs. Agency*, 445 F. Supp. 3d 772, 775 (E.D. Cal. 2020). Rather, "courts have various formulations for defining what constitutes a common nucleus of operative fact." *Id.* "Some courts consider: (1) when the facts are related in time, space, origin or motivation; (2) when the facts form a convenient trial unit; and (3) when treating the facts as a unit would conform to the parties' expectations." *Id.* (quotations omitted).

"Other courts consider more generally whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Id.* (quotations omitted). Yet other courts have held that even "a loose factual connection between the claims is generally sufficient." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). Regardless, if a claim shares a common nucleus of operative fact, the court may exercise supplemental jurisdiction over that claim even if the plaintiff alleges it against a party over whom the court does not have an independent basis for federal jurisdiction. *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1172-73 (9th Cir. 2002).

a. **Case or Controversy**

The City raises two challenges to the Court's supplemental jurisdiction.[5] First, it asserts Sibling Rivalry's claim against the City "does not arise out of the same 'case or controversy'" as Sibling Rivalry's claims against the United States. (Dkt. 26-1 at p. 5). In support, the City argues "the legal theories asserted against the United States (easement by implication and necessity) are entirely different than the claims [sic] asserted against [the City] for prescriptive easement" and that "having a single fact in common, or having 'loose factual connection' is insufficient." (*Id.* at pp. 7-8). The City describes this single fact as "the road existed and was used," and it argues "these are entirely different cases that simply bear upon the same place geographically." (Dkt. 30 at p. 7).

The Court disagrees that Sibling Rivalry's claims against the United States and the City do not arise out of the same case or controversy. To the contrary, the claims share a common nucleus of operative fact. That operative fact is the Shepherd family's historical use of the Three Bears Trail to access the SR Parcel. Because that use is contiguous across the Trail, the witnesses and evidence regarding the use will likely be the same for the claims against both the United States and the City. Also, resolving the issues related to the use of the Trail will form a convenient trial unit. Further, Sibling Rivalry has a reasonable expectation that its right to access the SR Parcel using the Trail will be resolved in a single lawsuit. Otherwise, Sibling Rivalry would risk inconsistent results in federal court and state court regarding its access to the SR Parcel over the Trail and the scope of that right.

---

[5]     As the City notes, Sibling Rivalry's amended complaint cites the incorrect provision of 28 U.S.C. § 1367. Instead of citing § 1367(a), the complaint cites § 1367(c)(3). As the City acknowledges, however, this error is not fatal to Sibling Rivalry's assertion of supplemental jurisdiction. *See Gargoyle Granite & Marble, Inc. v. Opustone, LLC*, No. 2:21-cv-00127-MMB, 2021 WL 5451497, at *3 (D. Idaho Nov. 22, 2021) (ruling failure to specifically allege supplemental jurisdiction not fatal).

Although the City is correct that the Ninth Circuit has not definitively adopted the standard

of a "loose factual connection" to satisfy the requirement of a common factual nucleus, *see, e.g.*,

*Wyrick v. Square Two-Financial Corp.*, No. SACV 15-01308-CJC, 2015 WL 13918260, at *3

(C.D. Cal. Dec. 22, 2015) (discussing adoption of "loose factual connection" standard), that fact

does not affect the Court's decision. The Court finds the historical use of the Trail is much more

than a "loose factual connection" between Sibling Rivalry's claims against the City and the United

States. Rather, the facts regarding the various Shepherd family members' use of the Trail since as

early as the 1960s will be significant in resolving Sibling Rivalry's access to the SR Parcel over

both the City Parcel and the BLM Parcel and the scope of that access.

### b.  Novel or Complex Issues

The City's second challenge to the Court's exercise of supplemental jurisdiction is the case

purportedly "raises novel or complex issues of State law." (Dkt. 26-1 at p. 11). *See* 28 U.S.C.

1367(c)(1) (providing exception to supplemental jurisdiction if "the claim raises a novel or

complex issue of State law"). The City identifies two issues it contends are "novel" and "complex."

First, it notes Sibling Rivalry "seeks a prescriptive easement for the purpose of constructing a

residence [on the SR Parcel] and appears to seek an easement whose [sic] scope far exceeds the

existing roadway." (Dkt. 26-1 at p. 12). Second, it contends whether Sibling Rivalry's claim

against the City is barred by the four-year "catchall" statute of limitation in I.C. § 5-224 is based

on the Idaho Supreme Court's decision in *Easterling v. HAL Pacific Properties*, 522 P.3d 1258,

1268 (2023), ruling this limitation applied to claims for easements implied by necessity.

The Court disagrees that either of these legal issues poses a "novel" or "complex" issue

requiring the Court to decline to exercise supplemental jurisdiction over Sibling Rivalry's claims

against the City. For example, as Sibling Rivalry notes, the Idaho Supreme Court has recently

issued well-reasoned decisions providing guidance for analyzing the scope of an implied easement. *Latvala v. Green Enterprises, Inc.*, 521 P.3d 725 (Idaho 2022); *Latvala v. Green Enterprises, Inc.*, 485 P.3d 1129 (Idaho 2021). For this reason, the question of an implied easement's scope is not novel.

Further, although the Court does not consider either issue the City identifies as "novel" or "complex," if a novel or complex state law issue were to arise, the Court may, if necessary, seek certification to the Idaho Supreme Court. Idaho Appellate Rule 12.3(a) provides that a federal district court may certify a question of law "on the court's own motion" if two conditions are met. First, "[t]he question of law certified is a controlling question of law in the pending action in the United States court as to which there is no controlling precedent in the decisions of the Idaho Supreme Court." I.A.R. 12.3(a)(1). Second, "[a]n immediate determination of the Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation in the United States court." I.A.R. 12.3(a)(2). Moreover, the doctrine of supplemental jurisdiction is flexible, *Carnegie-Mellon University*, 484 U.S. at 350, and the Court may reconsider exercising this jurisdiction "at every stage of the litigation." *City of Chicago*, 522 U.S. at 173.

Because Sibling Rivalry's claims against the United States and the City involve a common factual nucleus and because the case does not presently raise either "novel" or "complex" state law issues, the Court will exercise supplemental jurisdiction over the claim against the City and deny the City's motion to dismiss that claim.

## III.  ORDER

**IT IS ORDERED that:**

1.    Defendant City of Boise's Motion to Dismiss Amended Complaint (Dkt. 26) is **DENIED**.

2.      Defendant Bureau of Land Management's Motion to Dismiss (Dkt. 12) is **GRANTED** as to the BLM, but that motion, in which the United States joined (Dkt. 21) is **DENIED** as to the United States.

DATED: April 10, 2024

Amanda K. Brailsford
U.S. District Court Judge