UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SIBLING RIVALRY DIVERSE SERVICES, LLC, an Idaho limited liability company, | Case No. 1:23-cv-00047-AKB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER REGARDING SUMMARY JUDGMENT MOTIONS** |
| v. | |
| CITY OF BOISE, a political subdivision of the State of Idaho; UNITED STATES OF AMERICA; and UNITED STATES OF AMERICA BUREAU OF LAND MANAGEMENT, a governmental entity, | |
| Defendants. | |

Pending before the Court are Plaintiff Sibling Rivalry Diverse Services, LCC's ("Sibling Rivalry") Motion for Summary Judgment (Dkt. 47); Defendant United States of America's Motion for Partial Summary Judgment (Dkt. 44); and Defendant City of Boise's (the "City") Motion for Summary Judgment (Dkt. 46). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the record and the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court denies Sibling Rivalry's summary judgment motion and grants summary judgment for the United States and the City. Further, the Court lifts the stay of Sibling Rivalry's Fifth Cause of Action against the United States for an implied easement by necessity over Shaw Mountain Road.

**MEMORANDUM DECISION AND ORDER - 1**

## I. BACKGROUND

At issue in this case is Sibling Rivalry's right to access a forty-acre, landlocked parcel of real property located in the Curlew Gulch area of the Boise Foothills. The Court refers to this property as the "SR Parcel." Sibling Rivalry asserts a right to access the SR Parcel over private access commonly referred to as the Three Bears Trail.[1]

Presently, the Three Bears Trail traverses the property of three different landowners before reaching the SR Parcel: The Trail originates at a public road, Mountain Cove Road, travels over land which the City owns ("City Parcel") through land which Highland Livestock & Land Company owns ("Highland Parcel"), and then finally over a parcel which the United States owns and the Bureau of Land Management manages ("BLM Parcel"). After traveling over the City Parcel, the Highland Parcel, and the BLM Parcel, the Trail reaches the SR Parcel.

In 1913, Minnie Shepherd acquired an interest in the SR Parcel, and she eventually obtained title to the Parcel in 1954. Since then, the ownership of the SR Parcel has passed down through various members of the Shepherd family. In June 2020, Sibling Rivalry eventually acquired the SR Parcel (Dkt. 44-2 at ¶ 10). Minnie's great grandson, Ron Shepherd, is the sole owner of Sibling Rivalry (Dkt. 47-2 at ¶ 23). The historical use of the Three Bears Trail to access the SR Parcel is at issue to resolve Sibling Rivalry's right to traverse the BLM Parcel and the City Parcel to access the SR Parcel. Sibling Rivalry's right to traverse the Highland Parcel, however, is

---

[1]     Sibling Rivalry's amended complaint identifies the access to the SR Parcel as the Three Bears Trail. (Dkt. 9 at ¶ 1). On summary judgment, Sibling Rivalry asserts the Trail "is far more than a 'trail'" (Dkt. 47-1 at 3). The record is not clear regarding the exact nature of the access at various points along the route from Mountain Cove Road to the SR Parcel. For ease of reference, the Court refers to the access as the Three Bears Trail as it is identified in the amended complaint. In using this name, however, the Court does not attribute any characteristics to the access.

MEMORANDUM DECISION AND ORDER - 2

not at issue because Sibling Rivalry entered into an easement agreement with Highland Livestock & Land Company in 2022 (Dkt. 9 at ¶ 12, Ex. D).

Sibling Rivalry asserts it is entitled to an implied easement over the BLM Parcel. It alleges three alternative theories against the United States for an implied easement, including under an implied easement by prior use, an implied easement by necessity, and an easement under Idaho Code § 55-603.[2] Sibling Rivalry further alleges it is entitled to a prescriptive easement over the City Parcel. All three parties have filed summary judgment motions. The United States and the City argue they are entitled to summary judgment on the claims against them; meanwhile, Sibling Rivalry argues it is entitled to summary judgment ruling that it has legal rights to access the SR Parcel over the City and BLM Parcels.

## II.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets

---

[2]    Sibling Rivalry also alleges another claim against the United States for an implied easement by necessity over an alternative route, Shaw Mountain Road. At the parties' request, the Court has stayed that claim until it enters judgment on Sibling Rivalry's other claims seeking easements over the Three Bears Trail (Dkt. 41). The Court now lifts that stay.

its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323. When a claim requires clear and convincing evidence, the question on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Anderson*, 477 U.S. at 255.

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts" supported by evidence with "reasonable particularity" that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). Further, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988), nor is it required "to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the court's] attention to specific, triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

At the summary judgment stage, the trial court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158

MEMORANDUM DECISION AND ORDER - 4

(9th Cir. 1999). Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). In determining admissibility for summary judgment purposes, the court considers the contents of the evidence rather than its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

When the parties submit cross-motions for summary judgment, the trial court must consider the merits of each motion separately and review the evidence submitted in support of each cross-motion. *See Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Even if both parties assert there are no contested issues of material fact, the court still has the responsibility to independently make that determination. *See id.* (citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)).

### III.  ANALYSIS

### A.    Choice of Law

As an initial matter, the Court must determine the applicable law for resolving Sibling Rivalry's easement claims against the United States. The United States argues that Idaho state law applies to resolve these claims (Dkt. 52 at 5-7). It acknowledges the Ninth Circuit has ruled that "federal law governs a claim of easement over lands owned by the United States" in *McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008). As the United States notes, however, *McFarland* addresses an easement over federal land "taken by way of public grant." *Id.* at 1112. It argues the fact that the United States originally owned the federal land in *McFarland* is an

important, distinguishing fact and that the rule in *McFarland* does not apply to federal land the United States acquired by deed[3] (Dkt. 52 at 5).

Instead, the United States argues that State law "applies to easements over *acquired federal land* where the easement was granted before the United States' acquisition" (*id.*). It reasons that "to apply federal law to the creation of an easement *when the United States had no interest in the property* would violate the fundamental principles of both real property and conflicts of law—it would retroactively apply different law to an interest in property, creating uncertainty, unpredictability, and disparate results" (*id.* at 6). In support, it cites the Restatement (Second) of Conflict Laws § 222 (1971) (Dkt. 52 at 6). The Ninth Circuit follows this Restatement, which provides that protecting parties' expectations in property is of considerable importance. *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991) (citing Restatement). Additionally, the United States cites cases which suggest but do not directly rule that state law applies to determine an easement over federal land acquired by deed. *See, e.g.*, *Hoyt v. Benham*, 813 F.3d 349, 353 (7th Cir. 2016) (applying state law to determine prescriptive easement over federal land); *Bunyard v. U.S., Dept. of Ag., Forest Serv.*, 301 F. Supp. 2d 1052, 1054 (D. Ariz. 2004) (noting parties do not contest state law applies to determine easement over federal land).

Sibling Rivalry does not dispute that Idaho state law applies to resolve its claim for an implied easement by prior use, and it explains that "the Ninth Circuit apparently has not previously set forth federal common law for such an easement" (Dkt. 47-1 at 6). Sibling Rivalry, however,

---

[3]     The Court understands the United States' argument to distinguish between the "public domain," i.e., federal lands that the United States originally obtained, for example, from other sovereigns by purchase or treaty versus "acquired lands," which the United States acquired by deed from a state or private owner.

**MEMORANDUM DECISION AND ORDER - 6**

disputes that Idaho state law applies to resolve its claim for an implied easement by necessity. The federal and state prima facie elements of an easement by necessity differ somewhat. *Compare McFarland*, 545 F.3d at 1111 *with Aizpitarte v. Minear*, 508 P.3d 1260, 1275 (Idaho 2022).

*McFarland* provides that "an easement of necessity is created when: (1) the title of two parcels of land were held by a single owner; (2) the unity of title was severed by a conveyance of one of the parcels; and (3) at the time of the severance, the easement was necessary for the owner of the severed parcel to use his property. 545 F.3d at 1111 (quoting *Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1266 (9th Cir. 2006)). In addition to these elements, Idaho law adds an element of "great present necessity": "To show an implied easement by necessity [under Idaho law], the claimant must prove (1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement." *Aizpitarte*, 508 P.3d at 1275.

Sibling Rivalry does not cite any federal case law construing easements implied by necessity other than *McFarland*; it acknowledges that "the choice-of-law is not crystal clear"; and it concedes the element of great present necessity is the only distinction between state law and federal law (Dkt. 57 at 19). Here, the Court resolves Sibling Rivalry's claim for an implied easement by necessity against the United States based on the element of necessity at the time of severance, which is an element common to both Idaho and federal law. For this reason, the Court does not need to resolve which law applies, although the United States' rationale for relying on state law makes good sense. Moreover Sibling Rivalry's reliance on Idaho Code § 55-603 to claim an easement over the BLM Parcel contradicts its assertion that federal law applies to determine easements over federal lands.

**MEMORANDUM DECISION AND ORDER - 7**

**B.      Claims Against the United States**

As noted, Sibling Rivalry argues it has an implied easement over the BLM Parcel to access the SR Parcel. It alleges three claims against the United States: a statutorily implied easement under Idaho Code § 55-603, an implied easement by prior necessity, and an implied easement by prior use. The following undisputed facts resolve Sibling Rivalry's claims against the United States.

In May 1906, the United States Department of Interior conveyed to the State of Idaho the SR Parcel and the BLM Parcel, and the State jointly owned these two parcels (Dkt. 47-2 at ¶ 4; Dkt. 47-4 at 38-39; Dkt. 52-1 at ¶ 4). In May 1913, Minnie executed a land sale contract with the State to purchase the SR Parcel for $400 (Dkt. 47-2 at ¶ 5; Dkt. 47-4 at 90). In 1954, the State executed a deed on Minnie's behalf reciting the 1913 sale and conveying the property in fee simple to her (Dkt. 47-2 at ¶ 6; Dkt. 47-4 at 91).

After Minnie contracted to buy the SR Parcel, she attempted to buy the adjacent BLM Parcel from the State (*see* Dkt. 44-2 at ¶ 11) (discussing a 1922 land sale contract for BLM Parcel). By 1924, however, Minnie had defaulted on the contract; the State canceled the contract; and the BLM Parcel reverted to the State (*id.* at ¶ 12; Dkt. 57 at 21 n.11). Thereafter, the State retained the BLM Parcel until 2008 when it conveyed it and other lands surrounding the SR Parcel to the United States (Dkt. 44-2 at ¶¶ 14-15). As a result of this 2008 conveyance, the SR Parcel is surrounded by BLM land.

**1.      Implied Easement by Prior Use**

An implied easement by prior use "presumes that if an access was in use at the time of severance, such use was meant to continue." *Capstar Radio Operating Co. v. Lawrence*, 283 P.3d 728, 734 (Idaho 2021) ("*Capstar I*"). "The grantor and the grantee are presumed to have intended,

by viewing the grantor's obvious, continuous, preexisting use of the land in a particular way, to permanently include in the transaction any easement necessary for the continued proper and reasonable enjoyment of either the parcel transferred or the parcel retained." *Capstar Radio Operating Co. v. Lawrence*, 375 P.3d 282, 290 (Idaho 2016) ("*Capstar II*").

To establish an implied easement by prior use, a party must prove three elements: (1) the unity of title or ownership and a subsequent separation by grant of the dominant estate; (2) the common owner's apparent and continuous use long enough before the severance of the dominant estate to show that the use was intended to be permanent access to the land which is later severed; and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant estate. *Aizpitarte*, 508 P.3d 1267.

Here, the second element of this doctrine—the common owner's apparent and continuous use before severance—is dispositive. Key to addressing this element is determining when the unity of title between the SR Parcel and the BLM Parcel severed. Sibling Rivalry argues that "crucially, it was the 1954 deed delivery date, not the 1913 purchase date, when the SR Parcel was legally severed from the [BLM] Parcel" (Dkt. 47-1). The United States accepts this premise (*see, e.g.*, Dkt. 51 at 12) (analyzing apparent and continuous use in 1954). Idaho law, however, dictates a different severance date than 1954 because Minnie acquired a possessory interest in the SR Parcel under the land sale contract in 1913.

The Idaho Supreme Court addressed this issue in *Capstar I*. In that case, Funk purchased a parcel of land encompassing both the Lawrence parcel and the Capstar parcel. *Capstar I*, 283 P.3d at 731. In 1975, Funk entered into a sales agreement with Human Synergistics to sell it the Lawrence parcel. *Id.* at 732. "The contract was a title retaining contract in which the grant of the Lawrence parcel . . . was contingent upon the fulfillment of the sales contract." *Id.* Human

MEMORANDUM DECISION AND ORDER - 9

Synergistics paid off the agreement in 1992, and Funk issued a warranty deed conveying title to Human Synergistics that same year. *Id.* Years later, after a series of transactions conveying the parcels, Capstar sued Lawrence, asserting it had an implied easement by prior use over the Lawrence parcel to access the Capstar parcel. *Id.*

Addressing the common owner's apparent and continuous use, the Idaho Supreme Court noted that Funk had held unity of title and that the "central question [was] *when* separation occurred" because that date is the relevant date for measuring apparent and continuous use. *Id.* at 734. The Court noted that "whether separation occurs at the time of a sales contract or whether separation occurs at the time legal title passes is a matter of first impression" in Idaho. *Id.* In resolving the issue, the Court held that the land sale agreement in 1975 was the date that Funk severed the Lawrence Parcel from the Capstar Parcel. *Id.* It reasoned that "it is the creation of the possessory interest that creates the necessary separation" and that the presumption of an easement arises at the time of the contract. *Id.*

Applying the rule in *Capstar I* here, the State severed the SR Parcel and the BLM Parcel when it entered into a land sale contract with Minnie for the purchase of the SR Parcel in 1913. *See id.*; *Aizpitarte*, 508 P.3d at 1270 ("[S]everance refers to the creation of a dominant and servient estate when the unity of title ends."). Contrary to Sibling Rivalry's assertion, the relevant severance of the SR and BLM Parcels was not 1954 when the State conveyed title of the SR Parcel to Minnie. Rather, 1913 is the relevant date for measuring the apparent continuous use of the common owner—the State—to determine whether the State presumably intended to grant an implied easement over the BLM Parcel to access the SR Parcel. Sibling Rivalry, however, offers no evidence of the State's apparent and continuous use of the Three Bears Trail to access the SR

**MEMORANDUM DECISION AND ORDER - 10**

Parcel before 1913, and apparently no such evidence exists. The United States represents that "the State of Idaho has no record of *any* use of the claimed easement" (Dkt. 44-1 at 19).

Sibling Rivalry's reliance on *Aizpitarte* to argue the relevant severance date is the date of the deed is misplaced (Dkt. 47-1 at 8). In that case, the Aizpitartes purchased land in 1990 and partitioned it into four separate parcels in 1998 but retained ownership of all four parcels. *Aizpitarte*, 508 P.3d at 1265. In 2005, the Aizpitartes sold Parcel 3 to the Gregorys. *Id.* at 1265-66. Subsequently, Minear acquired Parcel 3, and the Aizpitartes sued Minear, alleging they had an implied easement by prior use over Parcel 3 to access their land. The Idaho Supreme Court ruled that "the attention on the prior continuous use must, by necessity, focus on the time that the unified estate was severed—which . . . is the 2005 sale from the Aizpitartes to the Gregorys." *Id.* at 1268. In other words, the *Aizpitarte* Court concluded that when the Aizpitartes partitioned their land into four parcels they did not sever the unity of interest because they continued to own all the parcels.

Here, the State did not simply partition the SR Parcel and the BLM Parcel in 1913. Rather, the State transferred a possessory interest in the SR Parcel to Minnie in 1913 under the land sale contract. This transfer of a possessory interest is distinct from partitioning, and under *Capstar I*, the relevant date of severance of unity of common interest is 1913, when the State entered into the land sale contract. Although the Washington Supreme Court in *Hubbard v. Grandquist*, 71 P.2d 410, 413 (1937), ruled that "actual severance" occurs "at the time the deed [is] delivered," that ruling is contrary to Idaho's rule in *Capstar I*, which is binding on this Court.

Sibling Rivalry's argument that Minnie's use of the Three Bears Trail is the relevant use is also unpersuasive. "To prove apparent continuous use, *the common owner* must use the claimed easement long enough *before severance* of the dominant and servient estate" to show the *common owner* intended to offer permanent access to the severed land. *Aizpitarte*, 508 P.3d at 1268 (first

and third emphasis added). Here, that common owner is the State. Contrary to the rule that the common owner's use is determinative, Sibling Rivalry argues that Minnie's use is relevant because it was "undertaken on the State's behalf" with "implicit permission" "in her capacity as a licensee of the State" (Dkt. 57 at 13). Sibling Rivalry, however, cites no authority for the proposition that Minnie's use is relevant, other than The Law of Easements & Licenses in Land § 4:18. No Idaho court, however, has adopted a rule that the party seeking to prove an implied easement by prior use may rely on her own use to establish apparent continuous use, and this Court declines to adopt such a rule.

Sibling Rivalry's argument that the State intended Minnie to have access to the SR Parcel is also unavailing. Idaho law provides that the trial court may consider evidence of the parties' intent, "including language in a sales agreement or deed to determine the presumed intent of the parties." *Capstar II*, 375 P.3d at 290; *see also Bird v. Bidwell*, 209 P.3d 647, 649 (Idaho 2009). Here, Sibling Rivalry acknowledges that "the Court's focus . . . must remain on the grantor's intent to grant an easement," and it argues that "there is substantial evidence . . . the State intended for [Minnie] to have access to the SR Parcel" (Dkt. 57 at 12). Sibling Rivalry, however, does not present any evidence of the State's intent to convey an easement when it entered into the land sale agreement with Minnie. While it may be true that "it is difficult to imagine why the State would purposefully sell inaccessible land" (*id.* at 12), that is not enough under the law to prove an implied easement by prior use.

Finally, the Court disagrees that Minnie's circumstances were identical to those in *Rosendahl v. Nelson*, 408 N.W.2d 609 (Minn. Ct. App. 1987), as Sibling Rivalry claims (Dkt. 57 at 14). The facts in *Rosendahl* are distinguishable. For example, in *Rosendahl*, the homeowners

**MEMORANDUM DECISION AND ORDER - 12**

used the driveway at issue continuously from 1967 until 1981 to access the garage to their home. *Id.* at 610. Here, there is no similar evidence of apparent continuous use by the State.

In summary, Sibling Rivalry has failed to show the State's apparent continuous use which is necessary to establish an implied easement by prior use. For this reason, Sibling Rivalry is not entitled to summary judgment that it has such an easement. Further, because there is no evidence in the record of the State's use of the BLM Parcel to access the SR Parcel in 1913, Sibling Rivalry has failed to establish a genuine issue of material fact for trial. Accordingly, the Court grants the United States summary judgment on Sibling Rivalry's First Cause of Action for implied easement by prior use over the BLM Parcel, and it denies Sibling Rivalry's motion on that same claim.

### 2.    Implied Easement by Necessity

Under the theory of implied easement by necessity, there is a presumption that "whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of the land he still possesses." *Burley Brick & Sand Co. v. Cofer*, 629 P.2d 1166, 1168 (Idaho 1981). To establish an implied easement by necessity under Idaho law, "the claimant must prove (1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement." *Easterling v. Clark*, 574 P.3d 349, 364 (Idaho 2025); *see also McFarland*, 545 F.3d at 1111 (noting necessity element).

"The second element requires 'reasonable necessity' at the time of severance.'" *Easterling*, 574 P.3d at 364-65. Proof of a reasonable necessity requires proof that the property over which the plaintiff claims an easement had "*legal* access" to a public road "at the time of severance." *Id.*; *see also id.* at 362 ("[T]he necessity must exist at the time of severance."); *Capstar II*, 375 P.3d at 291 (determining "whether reasonable necessity existed at the time the dominant and servient estates

were severed"). "[W]here land over which the way of necessity is claimed has no access to a public road, no necessity can arise." *Capstar I*, 283 P.3d at 736. The plaintiff has the burden to prove legal access to a public road at the time of severance. *Easterling*, 574 P.3d at 365.

Here, the second element—"reasonable necessity at the time of severance"—is dispositive. Regarding necessity, Sibling Rivalry simply argues that "there is no other route to access the SR Parcel" (Dkt. 47-1 at 14). Notably, however, Sibling Rivalry does not address the BLM Parcel's legal access to a public road at the time of severance in 1913. It neither argues nor offers evidence that the BLM Parcel had legal access to a public road at that time. For example, there is no evidence that in 1913 the State had the legal right to traverse over either the Highland Parcel or the City Parcel to Mountain Cove Road. The United States responds that Sibling Rivalry cannot prove this legal access (Dkt. 52 at 19; *see also* Dkt. 44-1 at 21), and Sibling Rivalry does not respond to that argument (*see generally* Dkts. 63, 57). Absent any evidence of legal access from the BLM Parcel to a public road in 1913, Sibling Rivalry cannot establish an easement by necessity.

An independent basis to reject Sibling Rivalry's assertion of an easement by necessity is that Minnie created her own necessity by defaulting on the 1922 land sale contract for the purchase of the BLM Parcel (Dkt. 44-1 at 22-21; Dkt. 52 at 18-19). "A party asserting an easement by necessity may not create the necessity through [her] own actions." *Machado v. Ryan*, 280 P.3d 715, 723 (Idaho 2012). It is an undisputed fact that Minnie attempted to purchase the BLM Parcel in 1922; she defaulted on that purchase; and the BLM Parcel reverted to the State's ownership. These facts rebut any presumption that the State intended to implicitly convey an easement over the BLM Parcel several years earlier in 1913 when it entered into the land sale contract for the SR Parcel. As the Idaho Supreme Court has explained, "[i]f implied easements are based on the presupposition that the parties would not have agreed to the transaction except with some tacit

understanding that an easement would exist, that presupposition should arise at the time of the contract as that is when the understanding would arise." *Capstar I*, 283 P.3d at 734.

Regardless of whether Minnie's 1922 attempt to purchase the BLM Parcel rebuts any presupposition of an easement arising in 1913, Sibling Rivalry fails to establish a genuine issue of material fact regarding reasonable necessity by failing to offer any evidence that the BLM Parcel had legal access to a public road in 1913. For this reason, Sibling Rivalry is not entitled to summary judgment that it has an implied easement by necessity. Accordingly, the Court grants the United States summary judgment on Sibling Rivalry's Third Cause of Action for implied easement by necessity over the BLM Parcel, and it denies Sibling Rivalry's motion on that same claim.

### 3.      Unity of Interest

The Court does not need to address the unity of interest element common to both implied easements by prior use and by necessity because Sibling Rivalry fails to establish a genuine issue of material fact regarding other elements of those theories. Nevertheless, the Court addresses the issue to clarify its prior ruling denying the United States' motion to dismiss. As the Court noted in its prior decision, the Idaho Supreme Court has not directly ruled on whether common ownership in the State of Idaho satisfies the unity of title element.

It is true that the Idaho Supreme Court stated in *Backman v. Lawrence*, 210 P.3d 75, 80 (Idaho 2009), that "original ownership by the public *or the state* is not sufficient to constitute the necessary unity of ownership" (emphasis added), and it quoted *Roberts v. Swim*, 784 P.2d 339, 345 (Ct. App. 1989), in support. This statement in *Backman*, however, is dicta because the *Blackman* Court did not address common ownership by the State; rather, it addressed common ownership by the United States. *Backman*, 210 P.3d at 80. And the *Roberts* court never identified whether it was addressing the unity of title in the federal government or in the State. For these and

other reasons, this Court declined to rule at the motion to dismiss stage that Sibling Rivalry's allegations failed to satisfy the unity of interest element. The Court, however, did not intend to rule definitively on the issue, as Sibling Rivalry now claims. Because the Court resolves Sibling Rivalry's claims on other elements, the Court does not need to and does not rule on the unity of interest question under Idaho law.

### 4. Statutorily Implied Easement Under I.C. § 55-603

Finally, Sibling Rivalry alleges that under Idaho Code § 55-603, the State's transfer of the SR Parcel to Minnie included with it the transfer of an implied easement over the BLM Parcel. Section 55-603 provides:

> A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the *person* whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.

I.C. § 55-603 (emphasis added).

The United States argues that this provision does not apply to State-owned lands because under the statute's plain language it applies only to "persons," and the term "person" does not include the State. The Court agrees. Under Idaho law, when determining the plain meaning of a statute, a court must give effect "to all the words of the statute if possible, so that none will be void, superfluous, or redundant." *Kuna Rural Fire Dist. v. Pub. Emp. Ret. Sys. of Idaho Bd.*, 512 P.3d 1119, 1123 (2022) (quotations omitted). Further, "[w]here the language of a statute is unambiguous, the clearly expressed intent of the legislature must be given effect; the Court need not go beyond the plain meaning of the statute." *Id.*

The plain language of § 55-603 clearly provides that it applies to "persons." Under Idaho law, the statutory term "person" is defined as a corporation and a natural person. Idaho Code. § 73-

114(1)(d). That definition does not include the State, and Sibling Rivalry does not cite any Idaho authority for the proposition that the term "person" includes the State. Because the State is not a person for purposes of statutory construction, § 55-603 is not applicable to a transfer of property by the State. Moreover, for the reasons discussed above, Sibling Rivalry has failed to offer any evidence of the State's use of the property including its obvious and permanent use. This failure is an alternative reason to conclude § 55-603 does not create an implied easement over the BLM Parcel. For these reasons, the Court denies Sibling Rivalry's summary judgment motion on its Second Cause of Action and grants summary judgment for the United States on this claim.

## C.    Claim Against the City for Prescriptive Easement

Because Sibling Rivalry does not establish an implied easement over the BLM Parcel, Sibling Rivalry's claim against the City for a prescriptive easement over the City Parcel may be moot. Nonetheless, the Court addresses the City's and Sibling Rivalry's summary judgment motions on the claim. Sibling Rivalry claims that the City purchased the City Parcel subject to an established prescriptive easement by adverse use.

A plaintiff bears a high burden to prove a prescriptive easement and must prove adverse use by clear and convincing evidence. *Cook v. Van Orden*, 507 P.3d 119, 125 (Idaho 2022); *Frost v. Gilbert*, 494 P.3d 798, 814 (Idaho 2021). "Idaho law disfavors private prescriptive easements" and provides that "courts should closely scrutinize and limit rights obtained through prescription because prescription acts as a penalty against the servient land owner." *Frost*, 494 P.3d at 814 (quotations omitted).

To establish an easement by prescription, plaintiff must prove its use of the property is "(1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement, [and] (5) for the

statutory period." *Cook*, 507 P.3d at 125. The applicable statutory period in this case is five years. *Id.*; *see also* Idaho Code § 5-203 (1919). A plaintiff may rely on his own use or the use of his predecessor for the prescriptive period. *Cook*, 507 P.3d at 125.

A plaintiff's use is adverse if it "runs contrary to the servient owner's claims to the property." *Id.* at 126. "Under claim of right means that the claimant has used the way without recognition of the rights of the owner of the servient tenement" or in other words without the owner's permission. *Marshall v. Blair*, 946 P.2d 975, 980 (Idaho 1997). To be adverse, the use "must invade or infringe on the owner's rights." *Id.*

Once a plaintiff proves the elements of adverse prescriptive use, "the burden shifts to the owner of the servient estate, who must demonstrate [the plaintiff's] use was permissive." *Cook*, 507 P.3d at 126; *Frost*, 494 P.3d at 813. "The general rule is that where no evidence is presented to establish how the use began, a presumption arises that the use was adverse and under a claim of right." *H.F.L.P.*, 339 P.3d at 566. The Idaho Supreme Court refers to this presumption as the "adverse use presumption." *Cook*, 507 P.3d at 127.

Despite that Sibling Rivalry must prove a continuous, uninterrupted, and adverse use for a period of five years by clear and convincing evidence to establish a prescriptive easement, it fails to identify a trigger date for the alleged easement. Determining the statutory period during which a plaintiff claims to have established the prescriptive easement, however, is essential to the analysis. *Id.* at 126. Failure to establish a date triggering the alleged prescriptive easement may be fatal to a plaintiff's claim. *Cf. H.F.L.P.*, 339 P.3d at 565. (noting proof problems arise when a plaintiff fails to establish date alleged easement was triggered).

Additionally, much of the evidence on which Sibling Rivalry relies for its clear and convincing showing that its predecessors used the Three Bears Trail adverse to the rights of the

**MEMORANDUM DECISION AND ORDER - 18**

owners of the City Parcel is general as to time and place and not particular to the City Parcel. The City acquired the City Parcel from Seth and Verna Hawkins in 2004 (Dkt. 47-2 at ¶ 22). In support of Sibling Rivalry's claim to a prescriptive easement, Sibling Rivalry identifies the following facts and other similar facts regarding the Shepherd family's use of the Trail when the Hawkins owned the City Parcel:

Minnie's grandson, Austin, graded and maintained the Three Bears Trail "[a]s early as the 1940s and continuing for 50 years" (*id.* at ¶ 10). Minnie's grandson, Paul, and his wife "lived on the SR Parcel from approximately 1960 to 1965"; Paul used the Trail for his "daily commute . . . in the 1960s" (*id.* at ¶ 13). Sometime around 1965, Minnie's son, Willoughby, and his wife resided on the property "for many years" until Willoughby passed away in 1996 (*id.* at ¶ 14). Minnie's grandson, Charles, "also lived on the SR Parcel in a mobile home for many years and at various times" (*id.*). "Over the years, locked gates were placed over the [Trail]"; "a boulder" was placed in the middle of the Trail blocking Paul's access to the SR Parcel; and the Hawkins placed "no trespassing signs" on the gates (*id.* at ¶¶ 15, 18, 21). Regardless, the Shepherd family's use of the Trail remained "continuous and uninterrupted" (Dkt. 47-1 at 16).

While these facts clearly establish that the Shepherds used the Three Bears Trail to access the SR Parcel, there is no clear and convincing evidence—or really even a preponderance of evidence—that the Shepherds' use invaded, infringed, or otherwise was adverse to the Hawkins' rights to the City Parcel. *See Marshall*, 946 P.2d at 980 (noting use "must invade or infringe on the owner's rights [to] be considered adverse"). To the contrary, the facts show that the Hawkins and Shepherds were not adversaries but "neighborly" (Dkt. 47-2 at ¶ 17). For example, the gates were not intended to keep the Shepherds out; rather, they were intended to keep the public out (*id.* at ¶ 18; Dkt. 47-4 at 196 (28:11-14)). The Shepherds had a key for the gate but used their own lock

after they kept misplacing the key (Dkt. 47-4 at 107 (34:24-25, 35:1-1)). *See Cook*, 507 P.3d at 126 (noting permission can be inferred from fact that dominant estate user had key to owner's gate). Although the Hawkins placed "no trespassing" signs on the Trail, these signs were intended to deter motorcyclists, not the Shepherds (Dkt. 46-4 at 15 (54:1-17)). Despite the signs and the gates, the Shepherds, the owners of the Highland Parcel, Idaho Power, and members of the public used the Trail (Dkt. 46-1 at ¶ 9).

Further, the Hawkins made efforts to permit the Shepherds to continue the use of the Trail despite obstacles to the Shepherds' access. For example, the Hawkins "helped sort out the confusion" when the boulder was placed on the Trail "so the Shepherds' access could continue" and "agreed to alter the route" around the boulder and over another portion of the City Parcel (Dkt. 47-2 at ¶ 21; Dkt. 46-1 at ¶ 14). The Hawkins also asked the Shepherds to go around rather than through the Hawkins' alfalfa pasture (Dkt. 46-1 at ¶ 11). These facts do not show that the Shepherds' use of the Trail was under a claim of right which was adverse to the Hawkins' rights; rather, they show the Hawkins permitted and facilitated the Shepherds to use the Trail over the City Parcel to access the SR Parcel.

Sibling Rivalry's reliance on *Marshall*, 946 P.2d 975, is misplaced. In *Marshall*, the district court ruled that the Marshalls had a prescriptive easement over Kirwan Lane, which was located on the Blairs' property, and the Blairs appealed. *Id.* at 979. On appeal, the Idaho Supreme Court did not address the Marshalls' proof of their prima facie case showing adverse use and establishing the adverse use presumption. *See generally id.* at 980-81.

Rather, the *Marshall* Court's analysis skipped to whether there was evidence of permissive use to rebut the adverse use presumption. *Id.* at 980. Specifically, the Court addressed "whether use of a roadway by adjoining landowners' invitees and guests falls within the definition of general

**MEMORANDUM DECISION AND ORDER - 20**

public use" and rebuts the adverse use presumption. *Id.* The Court ruled that "such use indeed must be considered general public use" and concluded that because the general public used Kirwan Lane, a presumption arose that the Marshalls used the Lane with the Blairs' permission *Id.* at 980, 981.

Then, the *Marshall* Court considered whether Marshall refuted the presumption of permissive use by showing that "they had performed some independent, decisive act indicating a separate and exclusive use of Kirwin Lane." *Id.* at 981. Regarding this issue, the Court considered that the Marshalls built a residence on their property and used Kirwin Lane to deliver the construction materials; they built a "gateway" over the Lane; they used the Lane "in derogation" of the Blairs' "no trespassing signs," which were intended to keep the Marshalls out; and they "cared for" portions of the Lane. *Id.*

Sibling Rivalry relies on these latter facts to assert its case is "practically identical." (Dkt. 47-1 at 18). The Court disagrees. *Marshall* is helpful to demonstrate use, but it does not help Sibling Rivalry establish that use was adverse. The evidence here shows that the general public used the Three Bears Trail. For example, the Little family and their employees used the Trail; Idaho Power used the Trail; and hikers and bicyclists used the Trail. This evidence establishes a presumption that the Shepherd family's use of the Trail was also permissive. Sibling Rivalry, however, has not offered evidence to either establish a presumption that the Shepherd family's use was adverse *or* to refute evidence that their use was by permission.

The Court concludes that no reasonable jury could find that Sibling Rivalry has established an adverse use necessary for a prescriptive easement by clear and convincing evidence. Accordingly, the Court grants the City's summary judgment motion on Sibling Rivalry's Fourth

**MEMORANDUM DECISION AND ORDER - 21**

Cause of Action and denies Sibling Rivalry's motion for a prescriptive easement over the City Parcel.

## IV.  ORDER

**IT IS ORDERED that:**

1.      Defendant United States' Motion for Partial Summary Judgment (Dkt. 44) is **GRANTED**.

2.      Defendant City of Boise's Motion for Summary Judgment (Dkt. 46) is **GRANTED**.

3.      Plaintiff Sibling Rivalry Diverse Services, LLC's Motion for Summary Judgment (Dkt. 47) is **DENIED**.

4.      The State of Idaho's Motion for Leave to File Amicus Curiae Brief (Dkt. 45) is **DENIED**.

5.      The Attorney General's Motion to Strike the Motion for Leave to File Amicus Curiae Brief is **DENIED** as **MOOT**.

6.      The Court **lifts the stay** (Dkt. 41) on Sibling Rivalry's Fifth Cause of Action and sets a telephonic scheduling conference to address this claim on **April 1, 2026, at 2:00 p.m. mountain time**.

7.      **Plaintiff** must initiate the conference call to (208) 208-334-9205 and must have all appropriate parties on the line.

DATED: March 17, 2026

_Amanda K. Brailsford_
Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 22**